GARDNER v. ALLRED.

4-9532                                          240 S. W. 2d 651

Opinion delivered June 18, 1951.

*John L. Sullivan,* for appellant.

*Digby & Tanner,* for appellee.

GRIFFIN SMITH, Chief Justice. By written contract L. E. Gardner agreed to build a garage for V. M. Allred for $4,688. It was to be a two-story affair with the second floor finished for living quarters. A four-page printed form used by the Federal Housing Administration was utilized in lieu of a personally-prepared contract. Typed interspacing on blank lines supplied explanations and specifications. Under a general stipulation in the printed portion there is a guarantee of sound materials. All construction is to be free of faults, and the work performed according to the best practices.

Item 1 deals with excavation and mentions clay soil, "minimum depth below finished grade, 14 [inches]." Item 2—foundations—provides for concrete footing material, not reinforced, with foundation wall material of concrete below grade.

Allred was out of the city when construction was begun, but returned after three days and ascertained that instead of excavating to a minimum depth of 14 inches for foundations, Gardner had undertaken to level off the plot and had substituted cement and chat. Appellant testified that twelve tons of this mixture were poured, the change in plans having been made because the land was sixteen inches lower than neighboring property, and Gardner thought the substitution would produce better results than the contractual specifications. About half of the concrete mixture had been poured when Allred made complaint. Gardner says that he asked for the plans, but was told that they had been left in Oklahoma, where

Allred had gone on a three-day trip. Gardner's defense was that Allred watched as the foundation was made. A two-strip driveway was included in the contract. Concrete pouring was completed on Friday in circumstances that justified appellant [he testified] in believing that the change in plans would be acceptable. Indeed, according to appellant, Allred complimented him on the character of the work.

On Monday following, Gardner was informed by his workmen that Allred had stopped the work, his principal complaint being that the foundation was faulty in that it was not supported by the trench-filled concrete provided for in the contract. Some of the wall tiles had then been set. Appellant mentions 1,225 blocks. Some plumbing preliminaries had been bought and partially installed, and gas and water connections had been provided for.

Allred sued to cancel the contract, asking in addition that the defendant be required to remove the structural matter from his premises. Effect of the answer is to admit deviations from the contract, but to assert that the work as done was better than the plans called for. In the alternative it was insisted that the work has been approved and that Allred had given the "go-ahead sign."

A preponderance of the testimony shows that the work was not qualitative under the contract and that Allred was not acting capriciously in objecting to the foundation. Barney Elias, an experienced builder, testified that good building practices, as applied to the structure in question (where a second story was to be supported) required a foundation extending below the frost line—18 inches in this latitude. Of course the contract called for but 14 inches and appellee was not entitled to the additional protection, but the figures were used by the witness in emphasizing his professional belief that the concrete slab was not appropriate, and that a trench should have been provided as the specifications indicated.

Photographs of exposed portions of the foundations show an apparent lack of solidity and lend credence to the beliefs of Elias that vices in the substituted construc-

tion were of a character justifying Allred's apprehension that the building when finished would be unsubstantial.

A closer question is whether Allred's conduct in standing by after the work began was a waiver of defects through acquiescence in changed plans he then thought were sufficient.

The trial court no doubt felt that Gardner's superior information regarding such matters should not be permitted to work injury to one who admittedly knew nothing about building requirements, hence the brief interval used by Allred in informing himself was not unreasonable and did not amount to estoppel. We accept these views and affirm.